UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 0:05-CV-186

NAUTILUS INSURANCE COMPANY,                              PLAINTIFF,

V.

JASON HALE, JAMES WEST, GLEN CASSADY,
CSX TRANSPORTATION INC., IPR, INC., AND
INTERSTATE PROPERTY REMEDIATION, INC.,        DEFENDANTS,

and

NAUTILUS INSURANCE COMPANY,                              THIRD PARTY
                                                                              PLAINTIFF,

V.

THE ELITE AGENCY,                                               THIRD PARTY
                                                                              DEFENDANT.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff Nautilus Insurance Company's

Motion for Summary Judgment [Docket No. 62], Defendant Glen

Cassady/IPR/Interstate Property Remediation's Motion for Summary Judgment

[Docket No. 65], Defendant CSX Transportation's Motion for Judgment on the

Pleadings [Docket No. 72], and Third Party Defendant The Elite Agency's Motion

for Summary Judgment [Docket No. 70].

Nautilus Insurance Co. filed this Complaint for Declaratory Relief seeking a

determination of whether Nautilus owes any coverage or duty to defend to

Defendants Interstate Property Remediation, Inc., and/or IPR, Inc. (collectively

"Interstate") under the general commercial liability policy purchased by Interstate.

In their Answer to the Complaint, Defendants Glen Cassady and Interstate filed a

Counterclaim alleging bad faith against Nautilus.

Both Nautilus and Interstate/Cassady have moved for Summary Judgment

on the question of coverage as well as on the bad faith claim.  Essentially, Nautilus

maintains that the accident at issue falls under two specific exclusions in the

insurance contract, and therefore there is no duty to defend and no liability

coverage.  Furthermore, Nautilus argues that the bad faith claim must fail as a

matter of law because the elements necessary to a finding of bad faith cannot be

satisfied.  Interstate asserts that coverage is so clear under the plain language of the

contract that not only is there coverage but that Nautilus was without a reasonable

basis to deny coverage.

## 1. Factual Background

The coverage dispute in this case arises from an accident that occurred on

December 27, 2004.  Interstate contracted with Defendant CSX Transportation

("CSX") to clear a right of way, which included the removal a building located in

the right of way, in Johnstown, Pennsylvania. The Plaintiff, Nautilus Insurance,

characterizes this act as a "demolition" of a building.  However, Defendant

Cassady states that this was one-story shed that needed to be knocked down in the

act of clearing the CSX right of way.

James West, an employee of Interstate, was instructed to clear the right of

way, including knocking down the one-story shed using a trackhoe (a tracked

backhoe).  Jason Hale, who had traveled to Johnstown with Mr. West and was

present at the job-site, was struck by the trackhoe and sustained serious injuries.

Mr. Hale filed a personal injury action in Pennsylvania state court, naming

Interstate as a party defendant.  Nautilus then sent an initial reservation of rights

letter and supplemental reservation of rights letter to put Interstate on notice of the

existence of coverage issues.  Nautilus provided Interstate with an initial defense,

subject to the above-referenced reservation of rights.  Nautilus then filed this

action, seeking a declaratory judgment that it has no duty to defend or indemnify

Interstate with respect to Hale's claims in the Pennsylvania state court action or

with regard to any claims that may be asserted in the future as a result of the

accident.

Defendant Glen Cassady was the manager of Interstate and purchased a

policy of liability insurance for the company.  He purchased the policy through

Pauline Williamson at The Elite Agency, Inc. and completed a "Commercial

Insurance Application" (the Application).  Mr. Cassady represented to Ms.

Williamson that he primarily cut grass and cleared right of ways for CSX, using

tractors, weed-eaters, and chainsaws.  Ms. Williamson then filled out the

application based on information provided by Cassady.

Soon after Ms. Williamson completed and Cassady signed the Application,

Nautilus issued a general commercial liability policy to Interstate.  That policy

contains the following exclusion:

> SECTION I–COVERAGES:
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE
LIABILITY
> 2. Exclusions
> h. Mobile Equipment
> "Bodily Injury" or "property damage" arising out of
> (1) The transportation of "mobile equipment" by an "auto" owned or operated by
> or rented or loaned to any insured; or
> **(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.**

Mobile equipment is defined in the policy as follows:

> SECTION V–DEFINITIONS
>
> 12. "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
> > a. Bulldozers, farm machinery, forklifts and other vehicles designed for  Use principally off public roads;
> > b. Vehicles maintained for use solely on or next to premises you own or rent;
> > c. **Vehicles that travel on crawler treads**

4

On or about June 15, 2004, Cassady, in his official capacity signed a General

Change Endorsement, including form SO58, Contractors Special Conditions.

Among other things, that General Change Endorsement contained the following:

**DEMOLITION AND BUILDING WRECKING CONDITIONAL**

**EXCLUSION**

The following exclusion is added to Paragraph **2. Exclusions** under **SECTION
I–COVERAGES, BODILY INJURY AND PROPERTY DAMAGE
LIABILITY:**

This insurance does not apply to "bodily injury" or "property damage" for
demolition or wrecking of buildings or structures conducted by you unless
coverage was purchased for **"Wrecking– buildings or structures"** and
designated on the Declarations:

The following additional exclusions apply to demolition or wrecking
operations:
(1) This insurance does not apply to "bodily injury" or "property damage"
arising out of:
(a) The use of cranes, ball and chain, or similar apparatus; or
(b) The demolition or wrecking of any building or structure that has
an original height in excess of three stories;
(2) This insurance does not apply to "property damage":
(a) Of any abutting wall, adjoining wall, common or party wall; or
(b) Included within the "explosion hazard," the "collapse hazard," or
the "underground property damage hazard," unless coverage is
purchased and entered as a covered hazard on the Declarations.

In their Answer to the Complaint, Interstate and Cassady assert a

Counterclaim against Nautilus alleging bad faith in handling, investigating, and

5

adjusting of Hale's personal injury claim.  After the filing of Defendant Interstate's

bad faith counterclaim, Plaintiff Nautilus filed a Third Party Complaint against the

Elite Agency.  The Third Party Complaint is the subject of the Motion for

Summary Judgment discussed below at subsection C.  In addition, Defendant CSX

has moved for Judgment on the Pleadings, also discussed at subsection C.

**2. Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, the Court must view

the evidence in the light most favorable to the nonmoving party.  Thus, when

examining the record the Court will resolve doubts and construe inferences in favor

of the Plaintiff in an effort to determine if any genuine issues of material fact exist.

However, in a series of decisions commonly referred to as the "trilogy", *Celotex

Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.,* 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986),

the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff."  *Anderson,* 477

U.S. at 252.  In short, the "trilogy" requires the nonmoving party to produce

specific factual evidence that a genuine issue of material fact exists.

The United States Court of Appeals for the Sixth Circuit has interpreted the

"trilogy" to mean that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989). As that Court stated, "the movant could challenge the opposing party to 'put up or shut up' on a critical issue...[and] if the respondent did not 'put up', summary judgment [is] proper." *Id.* at 1478.

### 3. Discussion

### A. Coverage under the Liability Policy

Nautilus argues that the accident which caused Jason Hale's injuries is not covered under the policy issued to Interstate. First, Nautilus maintains the activity in issue–using a trackhoe to clear a right of way, including knocking down a one-story building– falls under the exclusion called "**DEMOLITION AND BUILDING WRECKING CONDITIONAL EXCLUSION**" included in the General Change Endorsement. Additionally, Nautilus argues that Hale's injuries were caused by the use of "mobile equipment," as defined in the policy and which is specifically excluded from coverage. Interstate argues that coverage is clear and that summary judgment in its favor is appropriate.

### 1.) Demolition Exclusion

The demolition exclusion, as set forth above, appears in the Endorsement

7

Cassady signed on behalf of Interstate in June of 2004.  In Kentucky, such an

endorsement becomes part of the original policy when attached thereto, and the

endorsement signed later in time prevails over any conflicting provisions in the

original policy.  *See* K.R.S. § 304.14-360; *Goodin v. Gen. Accident Fire & Life

Assur. Corp.*, 450 S.W.2d 252, 256 (Ky. 1970).  Once Cassady signed the General

Change Endorsement, the Policy provided no coverage for any bodily injury or

property damage that occurred as a result of demolition unless that coverage was

purchased and noted in the Declarations.  The issue thus raised is what the

Insurance Contract contemplates in terms of excluded "demolition."

 Nautilus contends that since Interstate's Contract with CSX for the

Johnstown Pennsylvania job specifically called for the demolition of a building and

that since there is no evidence that Interstate purchased the coverage for

"Wrecking– buildings or structures," the policy does not cover Hale's injuries or

the resulting litigation.  In support, Nautilus points to the following specific portion

of the Endorsement:

> This insurance does not apply to "bodily injury" or "property damage"
> for demolition or wrecking of buildings or structures conducted by
> you unless coverage was purchased for **"Wrecking– buildings or
> structures"** and designated on the Declarations:

(Docket No. 1, Attachment No. 4, Page 3)

 Interstate, on the other hand, argues that the plain language of the demolition

8

exclusion contemplates a building in excess of three stories. Since this job

involved a one-story shed, Interstate argues that it is not "demolition" for the

purposes of the exclusion and that coverage exists under the plain language of the

policy. Interstate relies on the following passage from the Demolition Exclusion in

the General Change Endorsement. This passage immediately follows the passage

cited by Nautilus:

> The following additional exclusions apply to demolition or wrecking
> operations:
> (1) This insurance does not apply to "bodily injury" or "property damage"
> arising out of:
>   (a) The use of cranes, ball and chain, or similar apparatus; or
>   (b) The **demolition or wrecking of any building or structure that
>   has an original height in excess of three stories**; (emphasis added)

(Docket No. 1, Attachment No. 4, Page 3)

The policy does not define "demolition", but Interstate argues that the above

statement in the Endorsement means that anyone reading the Endorsement would

interpret it as only applying to buildings in excess of three stories. The Court

agrees with Interstate.

Kentucky Courts hold that insurance contracts are to be interpreted

according to the usage of the average person, and uncertainties and ambiguities are

to be resolved in favor of the insured. *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d

205, 206 (Ky. 1986). Moreover, because the policy language is drafted entirely by

the insurance company, the company is held strictly accountable for the language it

uses. *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859-60 (Ky. 1992).

Exceptions and exclusions are to be strictly construed so as to render the insurance

effective. *Id.* at 859.

The Demolition Exclusion, as Interstate points out, specifically refers to

structures having more than three stories.  It is undisputed that the building

Interstate was removing as the time of the accident was a one-story shed.  This

one-story shed had to be removed incidental to Interstate's job of clearing the CSX

right of way.  It does not stretch the imagination to conceive of a demolition

activity entirely different in character, with a purpose of demolishing large

structures, several stories in height.  The policy's express reference to structures of

more than three stories makes clear that the exclusion contemplates that kind of

demolition activity rather than the one in which Interstate was engaged in knocking

down a one-story shed.  Therefore, it is clear that under Nautilus' own usage of the

word "demolition" in the policy, Interstate's activity was not excluded by the

Demolition Exclusion included in the General Change Endorsement.

**2.) Mobile Equipment Exclusion**

In addition, Nautilus argues that the trackhoe in use at the time of the

accident brings the injuries under the "mobile equipment" exclusion in the

insurance policy.  It is undisputed that Mr. West was using a trackhoe on the
Johnstown job site to perform the CSX contract work at the time of the accident (a
Case, Model 9020B excavator).  It is further undisputed that the apparatus is a
"tracked backhoe" and was on tracks or treads.  The parties agree that this brings
the vehicle that caused Hale's injuries under the policy's definition of mobile
equipment.

Nautilus contends that since the trackhoe falls under "mobile equipment" it
is excluded under the Mobile Equipment Exclusion.  The Exclusion reads that the
policy "does not apply to:

> h. Mobile Equipment
>     "Bodily Injury" or "property damage" arising out of
> (1) The transportation of "mobile equipment" by an "auto" owned or
> operated by
> or rented or loaned to any insured; or
> **(2) The use of "mobile equipment" in, or while in practice for, or**
> **while being prepared for, any prearranged racing, speed,**
> **demolition, or stunting activity.**

However, the exclusion by its terms applies to "mobile equipment" used in a
very specific manner, one which obviously does not apply to the facts of this case.
That is, the highlighted passage, (h)(2), refers to "mobile equipment," and
"demolition" in the context of a prearranged racing, speed, or stunting activity.  It
is patently obvious that this passage contemplates a <u>performance</u> (e.g., a
"demolition derby").  Any suggestion to the contrary is simply not credible.

11

Thus, while Interstate's trackhoe certainly falls under the policy definition of mobile equipment, its use in this case does not even come close to falling under the excluded use of mobile equipment–a performance demolition activity.[1]  It is undisputed that Interstate was not engaged in a performance type demolition activity at the time of the accident.  Therefore, this exclusion clearly does not apply to the facts before the Court.

**3.) Other Defenses to Coverage**

In its response to Glen Cassady and Interstate's Motion for Summary Judgment, Nautilus urges that Summary Judgment in Interstate's favor is inappropriate in that Nautilus continues to have other defenses to coverage, namely 1) that Hale was an employee of Interstate; 2) that Cassady misrepresented the scope of his work; and 3) failure to give prompt notice of the Pennsylvania state court litigation.  Nautilus points out that it did not raise those issues in its Motion for Summary Judgment, but in Nautilus' own estimation, they have been preserved for trial.  The Court disagrees.  Nautilus seems to misapprehend the summary judgment standard applicable in this Court.

While Nautilus may not have been obligated to pursue the additional

---

[1]Upon thorough review of the insurance policy, the Court can find no other potentially applicable exclusion referring to "mobile equipment."

defenses to coverage in its own Motion for Summary Judgment, it did have a burden to carry in defending the Motion for Summary Judgment filed by Interstate. Interstate filed its motion seeking summary judgment to the effect that Nautilus owes a duty to defend and indemnify under the terms of the policy it issued to Interstate. The burden is thus on Nautilus in responding to that motion to come with all its hickory nuts. That is, to survive Interstate's Motion for Summary Judgment, Nautilus bears the burden of producing evidence on which the Court could find in its favor.

Nautilus' response to the Motion for Summary Judgment merely alludes to the existence of the additional defenses, but it does not refer to any evidence to support a finding, for instance, that Jason Hale's injuries are not covered by the policy because he was an employee of Interstate. In fact, based on Nautilus' response, the Court is unable to discern if any discovery was conducted on these defenses at all, because Nautilus offers nothing on this point whatsoever.

It is thus the opinion of the Court that Nautilus failed to sustain its burden with regard to any additional defenses to coverage, and Interstate is entitled to judgment as a matter of law on the question of coverage.

**B. Bad Faith**

Both Nautilus and Interstate have sought summary judgment on the

13

Counterclaim for bad faith.   Nautilus claims it is entitled to summary judgment on this issue because, as it states, it conducted a thorough investigation of the subject accident, including taking the statements of the parties who had knowledge of the events that led to Hale's injuries.  Nautilus states that based upon that investigation it concluded that the exclusions discussed above operated to bar coverage. Cassady was asked at his deposition what additional information he thought Nautilus should have obtained but didn't.  He responded "I can't tell you any information that you should have obtained, no." (Cassady depo., p. 53).

Interstate, on the other hand, claims that it is entitled judgment as a matter of law.  In support, Interstate restates its position that the policy provides coverage because the mobile equipment and demolition exclusions only apply to the knocking down of buildings in excess of three stories.  Accordingly, Interstate concludes that Nautilus had no reasonable basis to deny the claim and thus acted in bad faith by issuing the Reservation of Rights Letters and filing this Complaint for Declaratory Judgment.

Bad faith claims under Kentucky law are governed by the three-part test articulated in *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 888 (Ky. App. 1994).  To establish a bad faith claim the insured must prove "1) that the insurer was obligated to pay, 2) that the insurer lacked 'a

14

reasonable basis in law or fact for denying the claim,' and 3) that the 'insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.'" *Id.* (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). Additionally, if a claim is fairly debatable, "the insurer is entitled to debate that claim regardless of whether the debate concerns a matter of fact or one of law." *Id.* at 889-90.

The Court in *Farmland Mutual Ins. Co. v. Johnson,* 36 S.W.3d 368, 376 (Ky. 2001) added that "the appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable."

Nautilus argues that even assuming the Court could find that there is a duty to pay, there are no facts suggesting Nautilus lacked a reasonable basis in fact or law to deny the claim and whether it knew or recklessly disregarded such. In fact, Nautilus points out, the only argument Interstate has on this point is that Nautilus is wrong in how it interprets the policy exclusions. If a question of coverage is legitimate, or "fairly debatable," litigating those issues does not amount to bad faith. *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Svc., Inc.,* 880 S.W.2d 886 (Ky. App. 1994).

15

The Court has already explained that, as a matter of law, Nautilus was wrong in its interpretation of the insurance contract.  However, the Court struggles to find any extra-contractual evidence in the record to support a prima facie case for bad faith.  In the words of the Kentucky Supreme Court, "there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to warrant submitting the right to award punitive damages to the jury." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).  While Nautilus' reading of the policy may have been suspect, Interstate has presented nothing more than this skewed interpretation to support its claims of intentional bad faith conduct.  In fact, the fact that Nautilus has continued to provide Interstate with a defense pending the outcome of this litigation belies any suggestion of an unreasonable or reckless denial of Interstate's rights.

The Court believes that this dispute is merely contractual, absent any further evidence to support a cause of action in tort.  *See* 864 S.W.2d at 890.  An award of punitive damages simply is not warranted on the evidence in the record.  Accordingly, Nautilus' Motion for Summary Judgment will be sustained insofar as it relates to the claim for bad faith.  Interstate's Motion for Summary Judgment will be overruled in the same regard.

## C. Remaining Motions

Because the Court has found that there is coverage under the policy of insurance issued to Interstate, a number of remaining claims and pending motions are now moot.  First, as pertains to Defendant CSX Transportation's Motion for Judgment on the Pleadings.  The motion will be sustained in part and overruled as moot in part.

No claim or cause of action is stated in the Complaint against CSX, nor is any prayer for relief made against CSX.  CSX filed a timely answer to the Complaint, admitting the existence of the contract between CSX and Interstate whereby Interstate was to furnish superintendence, labor, equipment, and materials required to demolish, remove and properly dispose of four buildings located at the job site.

CSX also filed a crossclaim against Interstate and Cassady on this contract, which required Interstate to carry a minimum of one million dollars of liability insurance to cover the work performed under the contract.  No answer was filed.

Consequently, CSX maintains that it is entitled to judgment on the pleading in that 1) no recovery may be obtained against it by Plaintiffs in this action, as none is prayed in the Complaint, and 2) that it is entitled to judgment on the pleadings on its crossclaim such that Cassady and Interstate should be liable for any damage to CSX for any judgments arising out of a cause of action related to

17

the accident in the event it is established that Interstate was not insured for the CSX contract work.

Inasmuch as CSX's motion seeks judgment on the pleadings in that no recovery be obtained against it, the motion will be sustained. In addition, the oral motion to be dismissed made by Counsel at the December 18, 2006 pretrial conference will be sustained, and CSX will be dismissed from this action. Inasmuch as the motion seeks judgment on the crossclaim, it will be overruled and the crossclaim will be dismissed as moot. Because the Court has found coverage under the policy of insurance, no question is raised concerning Interstate's obligations to carry liability insurance on work performed for CSX.

Likewise, the Nautilus Third Party Complaint against the Elite Agency is moot in light of the Court's findings on the coverage and bad faith questions. Nautilus' Third Party Complaint against The Elite Agency is in response to Interstate's allegation in the Counterclaim that the agent who sold the Policy to Interstate was aware of the activities of Interstate, yet deceived Interstate into purchasing inadequate coverage and falsely represented the coverage provided under the policy. The Third Party Complaint will be dismissed and the Elite Agency's Motion for Summary Judgment overruled as moot.

**3. Conclusion**

For the reasons discussed above, the Court will enter summary judgment for Defendant Interstate on the question of coverage under the policy of commercial liability insurance.  The Court will also enter summary judgment for Plaintiff Nautilus on the question of bad faith. The Motion of CSX to be dismissed as a party will be sustained. All other motions will be dismissed as moot.

Accordingly, **IT IS HEREBY ORDERED:**

(1) that the Motion for Summary Judgment of Defendants Glen Cassady, Interstate Property Remediation, and IPR, Inc. [Docket No. 65] is **SUSTAINED IN PART** as to the Complaint for Declaratory Relief on the question of coverage, and **OVERRULED IN PART** as to the Counterclaim for bad faith;

(2) that the Motion for Summary Judgment of Plaintiff Nautilus Insurance Company [Docket No. 62] is **OVERRULED IN PART** as to the Complaint on the question of coverage, and **SUSTAINED IN PART** as to the Counterclaim for bad faith;

(3) that the Motion for Judgment on the Pleadings by Defendant CSX [Docket No. 72] is **SUSTAINED IN PART** as to the Complaint, and **OVERRULED AS MOOT IN PART**  as to the Cross-Claim;

(4) that the Oral Motion of CSX to be dismissed as a party is **SUSTAINED;**

(5) that the Motion for Summary Judgment [Docket No. 70] of the Elite

Agency is **OVERRULED AS MOOT,**

(6) that the Third Party Complaint of Nautilus [Docket No. 32]  is

**DISMISSED AS MOOT;**

**(7)** that the Cross-Claim of CSX [Docket No. 4] is **DISMISSED AS**

**MOOT;**

(8) that the Counterclaim of Interstate and Glen Cassady [Docket No. 19] is

**DISMISSED;**

and

**(**9) that a separate judgment consistent with this opinion shall issue

forthwith.

This   February 27, 2007.



Signed By:

_Henry R Wilhoit Jr._

**United States District Judge**